UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

    Plaintiff,                                                  Case No. 3:22-cr-100-1

vs.

HAROLD DILLARD, JR.,                  District Judge Michael J. Newman

    Defendant.

---

**ORDER DENYING DEFENDANT HAROLD DILLARD, JR.'S MOTION TO SUPPRESS**
**(Doc. No. 75)**

---

Now before the Court is a motion by Defendant Harold Dillard, Jr.'s ("Dillard") to suppress evidence (Doc. No. 75), filed through counsel. The Government has filed a memorandum in opposition. Doc. No. 78. On August 21, 2024, the Court held an evidentiary hearing on Dillard's motion, attended by counsel for both sides, and heard testimony from FBI Special Agent Robert Buzzard. Doc. No. 94. During a continued evidentiary hearing on November 20, 2024, the Court heard additional testimony from Special Agent Buzzard. The Court has carefully reviewed all of the above. Accordingly, the motion is ripe for review.

**I.**

On August 31, 2022, a confidential informant ("C.I.") conveyed to Special Agent Buzzard that the residence located at 5211 Lome Avenue in Trotwood, Ohio was a large-scale drug house that mixed, processed, and sold kilogram quantities of fentanyl. Doc. No. 96 at PageID 485. The C.I. also told Special Agent Buzzard that there were at least four individuals involved in the stash house, specifically Harold Dillard, Jr. (the subject of this motion), John Peters, and two others, and that the individuals involved were armed with firearms. *Id.*

On September 1, 2022, Special Agent Buzzard went to 5211 Lome Avenue to investigate. *Id.* at PageID 486.  Special Agent Buzzard observed a gray Jeep Grand Cherokee parked there, which the C.I. told him was usually at the residence and driven by Dillard.  *Id.*  During Special Agent Buzzard's surveillance, the Montgomery County Regional Agencies Narcotics and Gun Enforcement Task Force ("Task Force"), Special Agent Buzzard's partner team, set up a controlled-buy operation.  The Task Force sent an undercover officer to Victory Drive off West Third Street in the City of Trotwood, a location near 5211 Lome Avenue, to purchase methamphetamine.  *Id.* at PageID 486-87; Doc. No. 112-2 at PageID 812.  After the undercover operation began, Special Agent Buzzard observed that an individual got into the gray Jeep Grand Cherokee and left the residence.  Doc. No. 96 at PageID 487.  The driver of the Jeep Grand Cherokee met up with the undercover officer, and the undercover officer successfully purchased methamphetamine from the driver.  *Id.*  After the controlled-buy operation, Special Agent Buzzard observed the Jeep Grand Cherokee return to 5211 Lome Avenue.  *Id.* at PageID 489.  Based on the information from the C.I., Special Agent Buzzard's surveillance, and the successful undercover controlled-buy, the Task Force obtained a search warrant for the 5211 Lome Avenue residence to search for narcotics and weapons.  *Id.* at PageID 490-91; Doc. No. 112-1.

As Montgomery County, Ohio SWAT approached the residence to execute the search warrant, Special Agent Buzzard, who remained in the area of Lome Avenue to maintain surveillance, learned that two individuals, later identified as Harold Dillard, Jr. (*i.e.*, the Defendant in this case), and Co-Defendant Tyler Hamilton, had left the residence in the same gray Jeep Grand Cherokee that had been used in the controlled-buy earlier that day.  Doc. No. 96 at PageID 491-92.  Aerial surveillance kept continual watch on the Jeep Grand Cherokee as it traveled from 5211 Lome Avenue to a second residence located at 4149 Oakridge Drive.  *Id.* at PageID 492-93.

Shortly after the Jeep Cherokee arrived at 4149 Oakridge Drive, Co-Defendant Hamilton exited the vehicle and entered the residence. *Id.* at PageID 496. Once law enforcement arrived, they ordered the sole remaining occupant of the vehicle, Dillard, out of the vehicle at gunpoint because they "knew that the driver of that vehicle was selling narcotics" and they "knew that there were firearms involved." *Id.* at PageID 495. Officers handcuffed and arrested Dillard. *Id.*

After Dillard was secured, Special Agent Buzzard approached the Jeep Grand Cherokee and observed, in plain view, multiple cell phones, a scale with white residue on it, and a large sum of United States currency inside the vehicle. *Id.* at PageID 514-15.

In the motion to suppress, Dillard contends that the search warrant was insufficient to demonstrate probable cause to search 5211 Lome Avenue. Doc. No. 75 at PageID 427. Dillard also argues that officers lacked the requisite probable cause to arrest him at 4149 Oakridge Drive in violation of the Fourth Amendment. Doc. No. 77 at PageID 426.[1]

## II.

This Court has previously set forth the legal standards for resolving a motion to suppress and incorporates those standards herein. *See United States v. Cain*, No. 3:22-CR-88, 2023 WL 3437211 (S.D. Ohio May 12, 2023). It suffices to briefly note the Fourth Amendment forbids "unreasonable searches and seizures" and provides, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. art. IV. "Because arrests are 'seizures' of

---

[1] In Dillard's motion to suppress, he raises a *Miranda* issue but did not meaningfully develop the issue in his brief. *See* Doc. No. 75 at PageID 427. The Court thus finds this argument waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones").

'persons,' they must be reasonable under the circumstances." *District of Columbia v. Wesby*, 583 U.S. 48, 56 (2018) (citing *Payton v. New York*, 445 U.S. 573, 585 (1980)).

"[P]robable cause exists when an affidavit shows a 'fair probability' that criminal evidence will be found in the place to be searched." *United States v. Moore*, 999 F.3d 993, 996 (6th Cir. 2021). "Great deference" extends to the issuing judge's probable cause determination. *Id.* The required analysis considers "the affidavit's four corners to determine whether, under the totality of the circumstances, the low bar of probable cause has been overcome." *Id.* (citing *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006)). *Accord United States v. Christian*, 925 F.3d 305, 311-12 (6th Cir. 2019) (*en banc*) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (clarifying the district court must employ "great deference" when considering the issuing judge's probable cause determination and should "overturn that decision only if the [issuing judge] arbitrarily exercised [the judge's] authority")).

Probable cause also exists if, at the time of the arrest, "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *United States v. Dotson*, 49 F.3d 227, 230 (6th Cir. 1995) (citations omitted); *see also Maryland v. Pringle*, 540 U.S. 366, 371 (2003) ("The probable [ ] cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances" (citations omitted)); *United States v. Harris*, 255 F.3d 288, 292 (6th Cir. 2001) ("This Court has defined probable cause as 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion'" (citing *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir.1990))). "To determine whether an officer had probable cause for an arrest, '[the Court] examine[s] the events leading up to the arrest, and

4

then decide[s] 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause.'" *Wesby*, 583 U.S. at 56-57 (citing *Pringle*, 540 U.S. at 371).

### III.

Having carefully and thoroughly reviewed the motion papers, the affidavit and warrant at issue, and the parties' arguments, the Court finds Dillard's motion lacks merit. Assuming, *arguendo*, that Dillard has standing to raise the concerns here at issue, the affidavit submitted in support of the search warrant for the residence at 5211 Lome Avenue sets forth ample indicia of probable cause; is sufficiently particular as to the items to be searched; demonstrates the required "probable cause nexus," *see United States v. Sanders*, 106 F.4th 455, 460-61 (6th Cir. 2024) (*en banc*), and is neither vague nor conclusory. *See id.* at 462 (citing *Wesby*, 583 U.S. at 57, and noting that "probable cause is not a 'high bar'"). Dillard does not challenge the validity of the search warrant and thus it is presumed valid. *See United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019) ("Of course, a presumption of validity exists with respect to the affidavit supporting the search warrant"). Moreover, even if the Court were to now find the warrant lacking—which it does not—the officers relied in good faith on the search warrant at issue, and the good faith exception would apply. *See United States v. Leon*, 468 U.S. 897, 922-24 (1984).

Additionally, the motion fails because there were sufficient historical facts and events leading up to the arrest that amounted to probable cause to stop the Jeep Grand Cherokee and arrest Dillard as a matter of law. *See United States v. Arnold*, 442 Fed. App'x 207, 211 (6th Cir. 2011). The Jeep Grand Cherokee was used during a controlled-buy operation the day of Dillard's arrest, and it was parked at 5211 Lome Avenue, an alleged large-scale drug house, before and after the controlled buy. Further, Special Agent Buzzard had information from the C.I. that Dillard, the

5

driver of the Jeep Grand Cherokee, was involved in the drug scheme and was known to drive the same Jeep Grand Cherokee. Doc. No. 96 at PageID 487. Thus, when officers observed Dillard leave 5211 Lome Avenue in the vehicle he was known to drive, which had been used in the controlled-buy that same day, they had probable cause to arrest him because their observations provided them with sufficient information to support a reasonable inference that he had engaged in illegal drug dealing. *See United States v. Romero*, 452 F.3d 610, 617–18 (6th Cir. 2006) (finding probable cause to arrest where although defendant's identity was not confirmed, the officers reasonably inferred, based on known facts that defendant was involved in a drug-dealing scheme with his co-defendant); *Simley v. City of Ferndale*, No. 97-1858, 1999 WL 196504, at *3 (6th Cir. Jan. 13, 1999) (finding the officers had probable cause to arrest because defendant resembled the robber and his car resembled the getaway car used).

### IV.

Dillard's motion, therefore, is **DENIED.**

    **IT IS SO ORDERED.**

March 27, 2025                                          s/*Michael J. Newman*
                                                             Hon. Michael J. Newman
                                                             United States District Judge